*482 MEMORANDUM **
Petitioner Carmen Virginia Ordonez Torres (“Ordonez Torres”) petitions for review of the Board of Immigration Appeals’ (“BIA”) decision dismissing her appeal from an Immigration Judge’s (“IJ”) denial of her applications for cancellation of removal and voluntary departure. The IJ found that Ordonez Torres lacked good moral character because she misrepresented her address before an asylum officer and the immigration court. Because substantial evidence does not support the IJ’s decision, we grant the petition and remand.
This court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). “A determination that an alien lacks good moral character that is based upon a finding that the applicant falls into one of the ‘per se exclusion categories’ of 8 U.S.C. § 1101(f) ... is not a discretionary decision and therefore does not strip this court of jurisdiction to review a denial of cancellation of removal.” Gomez-Lopez v. Ashcroft, 393 F.3d 882, 884 (9th Cir.2005).
“We review for substantial evidence a finding of statutory ineligibility for suspension of deportation based on a lack of good moral character.” Ramos v. I.N.S., 246 F.3d 1264, 1266 (9th Cir.2001).
To be eligible for cancellation of removal, an applicant must be “a person of good moral character.” 8 U.S.C. § 1229b(b)(l)(B). “No person shall be regarded as, or found to be, a person of good moral character who ... has given false testimony for the purpose of obtaining any [immigration] benefits.” Id. § 1101(f)(6). For purposes of § 1101(f)(6), “ ‘testimony’ is limited to oral statements made under oath.” Kungys v. United States, 485 U.S. 759, 780, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (emphasis added); Ramos, 246 F.3d at 1266 (“For a witness’s false testimony to preclude a finding of good moral character, the testimony must have been made orally and under oath.”).
In her September 2001 and April 2002 hearings, Ordonez Torres testified orally that she lived in Huntington Park, though she in fact lived in San Diego. As the IJ noted, however, she was not placed under oath at either of these hearings. Neither of these misrepresentations, therefore, constitutes “false testimony” for purposes of § 1101(f)(6). See Kungys, 485 U.S. at 780, 108 S.Ct. 1537.
At her September 2002 hearing, “[a]fter acknowledging that she was still under oath,” Ordonez Torres “signed her cancellation application,” which indicated that she lived in Huntington Park. The IJ found that this constituted “false testimony.” Because “false statements which appear in an application, even if the application bears a statement of oath, do not constitute testimony within the meaning of [§ 1101(f)(6) ],” In re R-S-J-, 22 I. & N. Dec. 863, 865 (BIA 1999) (en banc); see also Kungys, 485 U.S. at 780, 108 S.Ct. 1537 (noting that “ ‘testimony’ is limited to oral statements”), however, the signing of her cancellation application was not “false testimony.”
The parties dispute whether Ordonez Torres was placed under oath during her asylum interview, and whether the asylum officer questioned her about her residence. The record can be read to support both sides of both questions. Because petitioner’s interpretation is not compelled, we accept the IJ’s finding that Ordonez Torres gave “false testimony” within the *483 meaning of § 1101(f)(6) during her interview with the asylum officer. See Kungys, 485 U.S. at 780, 108 S.Ct. 1537.
False testimony alone, however, does not preclude relief: “ § 1101(f)(6) applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits.” M; see also Ramos, 246 F.3d at 1266 (“For a witness’s false testimony to preclude a finding of good moral character, ... the witness must have had a subjective intent to deceive for the purpose of obtaining immigration benefits.”). Although § 1101(f)(6) does not contain a materiality requirement, “[o]bviously, it will be relatively rare that the Government will be able to prove that a misrepresentation that does not have the natural tendency to influence the decision regarding immigration or naturalization benefits was nonetheless made with the subjective intent of obtaining those benefits.” Kungys, 485 U.S. at 779-81, 108 S.Ct. 1537.
The government contends that Ordonez Torres misrepresented her address “for the purpose of obtaining employment authorization in a forum that is overburdened, thereby allowing her employment authorization to last longer.” Even if we were to assume that the Los Angeles court is more “overburdened” than the San Diego court, and that this somehow makes Los Angeles a preferable forum in general, the government’s argument fails because there is no evidence in the record that Ordonez Torres believed Los Angeles to be a more advantageous forum. Indeed, her voluntarily submitted motion to transfer venue to San Diego contradicts such a suggestion. It is apparent from the record that Ordonez Torres was directed by a notario to provide the notario’s address to the asylum officer. Her subjective intent, fairly viewed, was not to deceive the asylum officer or influence his decision; she was merely following instructions from her representative, whom she reasonably trusted to be familiar with the procedures for obtaining employment authorization.
In sum, this is not one of the “relatively rare” cases in which “a misrepresentation that does not have the natural tendency to influence the decision regarding immigration ... benefits was nonetheless made with the subjective intent of obtaining those benefits.” Kungys, 485 U.S. at 780-81, 108 S.Ct. 1537. Substantial evidence does not support the IJ’s finding that Ordonez Torres is statutorily ineligible for cancellation of removal and voluntary departure because she lacks good moral character. We therefore GRANT the petition and REMAND for a determination of Ordonez Torres’s eligibility for cancellation of removal and voluntary departure. GRANTED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.